# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

___

| | |
|---|---|
| MAVIS WARD, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    No. 1:19-cv-1119-STA-jay |
| | ) |
| RONALD COLEMAN-WARD, | ) |
| FIRSTBANK, TROY BUTTREY, | ) |
| JONATHAN BELL, | ) |
| ROBERT NEWCOMB, and | ) |
| JOHN DOE, | ) |
| | ) |
|       Defendants. | ) |

___

## ORDER DISSOLVING TEMPORARY RESTRAINING ORDER
## AND DENYING PRELIMINARY INJUNCTION
___

On October 4, 2019, the Court granted Plaintiff Mavis Ward's motion for temporary restraining order.[1] The Court enjoined a foreclosure sale noticed for 10:00 a.m. and 10:30 a.m. on Monday, October 7, 2019, in Henry County, Tennessee. The Court held a hearing with the parties on Friday, October 11, 2019, to consider whether Plaintiff was entitled to a preliminary injunction. Plaintiff, who is representing herself in this matter, appeared by telephone, and counsel for Defendants FirstBank, Troy Buttrey, and Jonathan Bell appeared in court.[2] For the

---

[1] The Court assigned the case to the United States Magistrate Judge for the management of all pretrial matters pursuant to Administrative Order 2013-05. Because Plaintiff seeks injunctive relief, the presiding judge is addressing that relief. The Magistrate Judge will continue to handle all other pretrial matters.

[2] To date only counsel for Defendants FirstBank, Troy Buttrey, and Jonathan Bell have entered an appearance in the case, and there is no proof that any of the other named Defendants have been served.

1

reasons set forth below, the Court hereby dissolves the October 4th temporary restraining order and denies a preliminary injunction to halt the foreclosure.

## BACKGROUND

Plaintiff filed suit June 10, 2019, alleging a number of claims related to the affairs of her 55-acre family farm in Cottage Grove, Tennessee. According to the Complaint, Plaintiff has joint ownership with her son Ronald Coleman-Ward of the acreage, which Coleman-Ward operated as a cattle farm. Plaintiff alleges that she invested $193,000 in the business and had an oral contract with her son for the repayment of her investment, presumably from the farm's profits. It is not clear from the pleadings whether Plaintiff funded her investment in the farm from her own assets or whether she borrowed the money from FirstBank with the farm property pledged as collateral. In any case, Plaintiff alleges that in May 2014 she refinanced the farm property with FirstBank in her name only for the amount of $189,736.00. Plaintiff further alleges that she had an additional loan in her name only with FirstBank in the amount of $9,883.63 to finance the purchase of cattle chutes and bush hog equipment.[3] At some point, the farm experienced the misfortune of losing one-third of the cattle herd to disease.

The Complaint names Plaintiff's son and business partner Ronald Coleman-Ward, FirstBank, Troy Buttrey, Jonathan Bell, Robert Newcomb, and John Doe as Defendants. Plaintiff alleges causes of action for breach of implied contract, breach of contract, breach of fiduciary duty, violations of 42 U.S.C. § 1981, violations of the Equal Credit Opportunity Act,

---

[3] The terms of her loans with FirstBank are not clear. None of the exhibits to the Complaint show a May 2014 loan with FirstBank in Plaintiff's name only and none in the amounts of $189,736.00 or $9,883.63. The only exhibit signed by Plaintiff appears to be a debt modification agreement between FirstBank and Plaintiff and her son in the amount of $26,604.80. That agreement is dated June 11, 2016.

15 U.S.C. § 1691, and tortious interference with a contract.[4] While all of the particulars of Plaintiff's allegations are not entirely clear, the gravamen of Plaintiff's Complaint is that her son entered into a loan modification or reorganization with FirstBank and that the bank and its employees somehow allowed him to do so without Plaintiff's informed consent or by means of some fraud on Plaintiff. Plaintiff specifically alleges that her son improperly obtained loans from FirstBank and pledged the 55 acres as collateral with the help of First Bank employees Troy Buttrey and Jonathan Bell and former FirstBank employee Robert Newcomb without proper notarization of Coleman-Ward's signature. Plaintiff alleges that by doing so, Buttrey, Bell, and Newcomb breached their fiduciary duty to Plaintiff and fraudulently induced her to sign a loan modification, because of her race in violation of 42 U.S.C. § 1981 and the Equal Credit Opportunity Act, 15 U.S.C. § 1691.[5] The Complaint seeks $850,000.00 in compensatory, treble, punitive, and actual damages.

In her motion for a TRO, Plaintiff sought relief in response to a notice of foreclosure she had received from counsel for FirstBank dated September 13, 2019. The letter stated that Plaintiff's note was delinquent and that the full amount of principal and interest was due and owing to the bank. Plaintiff argued that a TRO was justified based on the allegations of her Complaint as well as the fact that Robert Newcomb, a vice-president at the bank and one of the

---

[4] The Complaint cites the statute of limitations for contract actions (Tenn. Code Ann. § 28–3–109) and the statute of limitations for a private right of action under the Tennessee Consumer Protection Act (Tenn. Code Ann. § 47–18–110), though the Complaint does not actually allege a violation of the TCPA.

[5] Plaintiff also alleges that Buttrey, Bell, and Newcomb "breached the trust of the banking contracts in the name of Blakemore Farms and Blakemore Cattle," which is apparently the tradename of Coleman-Ward's farm. Plaintiff further alleges that FirstBank, Buttrey, Bell, and Newcomb tortuously interfered with her contractual relationship with her son.

named Defendants in this action, was recently convicted of bank fraud in this Court. Plaintiff alleged that she was one of the victims of Newcomb's fraud, a scheme by which Newcomb defrauded her out of $30,000 in connection with the sale of a tractor and overall in the amount of $100,000 over a period of five years. The Court granted the motion and entered a temporary restraining order to enjoin the foreclosure sale until the parties could be heard further on the issue.[6]

At the injunction hearing, Plaintiff addressed the Court first and reported on her recent health issues, the treatment she was receiving for the issues, and the medication she was currently taking. Plaintiff explained that her bouts with pain and vertigo had required her to see a doctor and begin taking medicine for pain. Plaintiff found that the medication caused dizziness and made her feel incoherent. Plaintiff argued that her current health condition justified extending the temporary restraining order. Plaintiff also expressed her desire to find an attorney to assist her in prosecuting her claims. Plaintiff stated that she cannot afford representation and that a retired lawyer in her church has referred her to a lawyer, apparently in Indiana where Plaintiff resides. Counsel for Defendants FirstBank, Buttrey, and Bell argued that the Court should lift the temporary restraining order since Plaintiff had not demonstrated irreparable harm. Plaintiff's ability to recover money damages will make her whole in the event she can prevail on

---

[6] The Court set the hearing for Friday, October 11, 2019. In an order dated October 9, 2019, the Court denied Plaintiff's motion to continue the hearing. The following day, Plaintiff filed a notice of interlocutory appeal (ECF No. 25). The Sixth Circuit has held that an appeal taken from a non-appealable order does not divest a district court of jurisdiction. *Cochran v. Birkel*, 651 F.2d 1219, 1222 (6th Cir. 1981) ("[A] notice of appeal from a plainly nonappealable order may properly be ignored by the district court."). The denial of a motion to continue is a non-appealable order. *United States v. Baldwin*, 506 F. Supp. 300, 302 (M.D. Tenn. 1980). Under the circumstances, the Court continues to have jurisdiction over Plaintiff's request for injunctive relief.

her claims. FirstBank asserted that an injunction would continue to deprive the bank of its right to foreclose on the collateral. Counsel represented to the Court that there was currently no farming activity taking place at Plaintiff's property. The bank was therefore ready to proceed with the foreclosure.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of injunctions and restraining orders. "The only type of injunctive relief that a district court may issue ex parte [without notice] is a temporary restraining order." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). By its own terms, a TRO is of limited duration and simply preserves the status quo until both parties to a dispute have the opportunity to be heard. Once a temporary restraining order issues without notice, a district court must set a hearing on preliminary injunctive relief "at the earliest possible time, taking precedence over all other matters . . . ." Fed. R. Civ. P. 65(a)(3). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Just as with a TRO, a district court balances the following factors when deciding whether to grant a preliminary injunction: (1) the moving party's likelihood of succeeding on the merits; (2) the permanent harm to the moving party if the court does not grant an injunction; (3) the substantial harm the injunction would cause third parties; and (4) whether the injunction would serve the public interest. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018) (citing *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)). Courts weigh the facts "against each other;" they do not serve as prerequisites. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). No single factor is determinative

except that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

A party seeking the preliminary injunction has the burden of justifying injunctive relief, *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 121 (6th Cir. 2019). Although a moving party need not prove the merits of her case at a preliminary injunction hearing, *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Camenisch*, 451 U.S. at 395), the United States Court of Appeals for the Sixth Circuit has held that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (collecting cases).

## **ANALYSIS**

The Court holds that Plaintiff has not shown why the Court should convert its temporary restraining order into a preliminary injunction to stop the foreclosure sale of her property pending a full trial on the merits. First and foremost, Plaintiff has not demonstrated a likelihood of success on her claims. "In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). The plaintiff must actually "raise[] questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id*. Plaintiff has not carried her burden to make such a showing here.

Plaintiff's Complaint alleges serious claims of fraud and the violation of her civil rights. Stripped of its legal labels and conclusions, however, Plaintiff's pleadings do not suggest anything more than the possibility of success on those claims. Plaintiff does not seriously

dispute that she had significant loans with FirstBank and that her account is in default. The Complaint alleges that in May 2014 she refinanced her property with FirstBank and obtained a loan of approximately $190,000. While the Complaint does not allege what the outstanding balance on Plaintiff's loan is,[7] Plaintiff does not deny that her loan is now overdue or that the bank lacks the right to foreclose on her property. The Complaint actually alleges that her son's cattle operation suffered losses and that her son is now in breach of an oral contract to repay her for her investments in their farming enterprise. The reasonable inference from these facts, is that without farm income or payments from her son, Plaintiff has not repaid her loan. Plaintiff does make a number of vague allegations about how her son perhaps used their jointly owned property as collateral to obtain loan modifications and/or additional loans from the bank. Plaintiff also makes allegations about how FirstBank and its employees fraudulently extended loans to her son, which were secured by their property only, without her full and knowing consent. The Court expresses no view on the merits or plausibility of the pleadings or whether Plaintiff has given Defendants adequate notice of her claims for relief. The point is that none of these untested allegations call into question the basic premise that Plaintiff owes FirstBank a debt and her land is the bank's security. At the end of the day, the connection between the foreclosure on her property and Defendants' purported acts of fraud and breaches of contract and fiduciary duty is tenuous.

Plaintiff primarily relies on the fact that former FirstBank employee Robert Newcomb was recently convicted of bank fraud. It is true that Newcomb pleaded guilty last year to a charge of bank fraud in violation of 18 U.S.C. § 1344. *See United States v. Robert Newcomb*,

---

[7] Counsel for Defendants stated at the hearing that the loan was "under water," in that the principal and interest owed likely exceeded the value of the collateral.

No. 1:18-cr-10113-STA, Order On Guilty Plea (ECF No. 5), Nov. 9, 2018. The Court sentenced Newcomb to 12 months' incarceration on the charge and ordered him to make $110,990.45 in restitution. *United States v. Robert Newcomb*, No. 1:18-cr-10113-STA, Redacted Judgment (ECF No. 20), Mar. 12, 2019. According to the government's factual basis for Newcomb's plea agreement (ECF No. 1-1, No. 1:18-cr-10113-STA), Newcomb and a business partner had a side venture refurbishing and reselling used tractors. Newcomb's partner also had a loan with FirstBank. When his partner shorted Newcomb for his $7,400 share of the profit on a transaction from their side business, Newcomb fraudulently modified his partner's loan at FirstBank by $7,400, thereby allowing the partner to repay Newcomb his $7,400 share. Unfortunately for Newcomb, the partner subsequently defaulted on the loan at a total loss of $118,390.45 to FirstBank.

Whatever subsequent discovery may reveal, Plaintiff has not alleged how Newcomb's bank fraud conviction ties in to her own case or why Newcomb's handling of her account should preclude the bank from exercising its security interest in Plaintiff's property. Newcomb's role in the case at bar is not at all clear from the pleadings. Plaintiff has offered only the most conclusory claims to show that Newcomb's fraudulent activities have any connection to her account with FirstBank. For each of these reasons, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits. Her request for a preliminary injunction must be denied for this reason alone.

The remaining factors do nothing to tip the balance in Plaintiff's favor. The Court finds that Plaintiff has not carried her burden to show that foreclosure will result in irreparable harm. When courts consider irreparable harm, "[t]he key word . . . is irreparable," and "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs

heavily against [the] claim." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal quotation marks and citation omitted). The Sixth Circuit has commented without discussion that "a foreclosure in terms of losing unique real property" constitutes irreparable harm for purposes of Rule 65. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001). The Complaint alleges that Plaintiff's 55 acres are the last parcel in a 150-acre family homestead situated in Henry County, Tennessee. Real property of this kind is unique and its value hard to calculate, suggesting that the loss of the property would be irreparable.

On the other hand, Defendants correctly point out that Plaintiff can recover money damages if she prevails on her claims. In granting Plaintiff a temporary restraining order, the Court noted that as farm property, Plaintiff's land produced the income needed to repay her loan. But counsel for Defendants asserted at the injunction hearing that Plaintiff's property is not currently being used for farming or any other agricultural pursuit. And there remains at least the theoretical possibility that Plaintiff could also redeem the property within two years of the foreclosure sale as a matter of Tennessee law. *See* Tenn. Code Ann. § 66–8–101 ("Real estate sold for debt shall be redeemable at any time within two (2) years after such sale: . . . [w]here it is sold under a deed of trust or mortgage without a judicial sentence, unless [exceptions apply]"). In an unreported decision, the Sixth Circuit found that foreclosure would not constitute irreparable harm where state law permitted a right of redemption, as Tennessee does. *Livonia Props. Holdings, LLC v. Farmington Road Holdings, LLC*, 399 F. App'x 97, 104 (6th Cir. 2010) (finding no error in the district court's that conclusion foreclosure was not irreparable in light of Michigan's right of redemption). Under the circumstances, the Court cannot say that foreclosure will result in irreparable harm to Plaintiff. Therefore, this factor does not weigh in favor of

granting Plaintiff a preliminary injunction.

As for the last two factors, a preliminary injunction would not create a significant risk of harm to third parties and would not necessarily vindicate important public interests. The Court notes FirstBank's argument that an injunction will continue to deny it the benefit of its bargain with Plaintiff and result in lost interest income. The Court's inquiry, however, is focused on harm to third parties, and not necessarily FirstBank. Whatever harm an injunction might cause FirstBank, it is certainly true that a strong public interest in the enforcement of contracts like Plaintiff's loan agreement with the bank exists. At the same time, two of Plaintiff's federal claims, whatever their merits, implicate her civil rights, which is also clearly a matter of great public interest. The Court concludes that these considerations are evenly balanced and do not weigh either in favor of or against a preliminary injunction.

In sum, Plaintiff has not discharged her burden of proof. Plaintiff has not shown a likelihood of success on the merits of her claims or irreparable harm from the prospective foreclosure on her farm property. And the harm to third parties and the public interest in cases of this kind do not alter the balance.

## CONCLUSION

The Court holds that Plaintiff has not shown an entitlement to a preliminary injunction to stop the foreclosure sale of her real property. Therefore, the Court's October 4th temporary restraining order is dissolved, and Plaintiff's request for a preliminary injunction is denied.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: October 16, 2019.